IN THE COURT OF APPEALS OF TENNESSEE

FILED

June 30, 1997

Cecil Crowson, Jr.
Appellate Court Clerk

DIANA AYCOCKE FLANAGAN,        ) C/A NO. 03A01-9612-GS-00404
                               )
          Plaintiff-Appellee,  )
                               )
                               )
                               ) APPEAL AS OF RIGHT FROM THE BLOUNT
v.                             ) COUNTY GENERAL SESSIONS COURT
                               )
                               )
                               )
                               )
JAMES WILLIAM FLANAGAN,        )
                               ) HONORABLE WILLIAM R. BREWER, JR.,
          Defendant-Appellant.) JUDGE


For Appellant                    For Appellee

KEVIN W. SHEPHERD                PERRY P. PAINE, JR.
Maryville, Tennessee             Paine, Garrett & Bray
                                 Maryville, Tennessee


O P I N I O N


VACATED IN PART
MODIFIED IN PART
AFFIRMED IN PART
REMANDED                                    Susano, J.

This is a divorce case.  The trial court granted the plaintiff Diana Aycocke Flanagan (Wife) an absolute divorce from the defendant James William Flanagan (Husband).  Husband appealed, arguing (1) that Wife did not prove she was entitled to a divorce on the ground of inappropriate marital conduct; and (2) that the trial court's division of property was inequitable or otherwise contrary to law.

When the parties married on July 24, 1992, Wife was 38 and Husband was 43.  They separated in April, 1996.  At the time of trial, Wife was 42 and Husband was 47.  Neither of the parties had been previously married.  Their union produced no children.  Wife had two children at the time of the parties' marriage.  These children lived with the parties during their marriage.

Wife sought a divorce on the fault ground of inappropriate marital conduct.  In his answer, Husband denied that Wife was entitled to a divorce.  He did not file a counterclaim.

T.C.A. § 36-4-102(a)(1) sets forth as a ground for divorce the following "treatment or conduct":

> The husband or wife is guilty of such cruel
> and inhuman treatment or conduct towards the
> spouse as renders cohabitation unsafe and
> improper which may also be referred to in
> pleadings as inappropriate marital conduct; .
> . .

This ground has been defined as

2

> the willful, persistent causing of
> unnecessary suffering, whether in realization
> or apprehension, whether of body or mind, in
> such a way as to render cohabitation
> dangerous and unendurable.

*Gardner v. Gardner*, 104 Tenn. 410, 412, 58 S.W. 342, 343 (1900).

*See also* *Stone v. Stone*, 56 Tenn.App. 607, 611, 409 S.W.2d 388, 391 (1966); *Schwalb v. Schwalb*, 39 Tenn.App. 306, 328, 282 S.W.2d 661, 672 (1955).

It is clear that relatively subtle conduct can amount to "cruel and inhuman treatment or conduct":

> Cruel and inhuman treatment is often times
> not evidenced by public assaults and
> beatings, but is accomplished in more subtle
> and insidious ways.  The whispered invective,
> accusation by insinuation, stinging sarcasm
> and heartless intimidation are the implements
> frequently used by which love, the vital
> principle which animates a marriage, is
> tortured to death; with the result that the
> once happy joinder becomes nothing less than
> a "bridge of groans across a stream of
> tears."

*Newberry v. Newberry*, 493 S.W.2d 99, 101 (Tenn.App. 1973).  The quote from *Newberry* is followed by language stressing the importance of a trial court's assessment of credibility when a party seeks a divorce on the T.C.A. § 36-4-102(a)(1)ground:

> The existence of such continuous refined
> cruelty can best be determined by the trier
> of the facts who has seen the parties face to
> face and who has observed their manner and
> demeanor as well as that of their respective
> witnesses.  In such matters, the Trial
> Judge's judgment as to credibility of

3

> witnesses should not be overturned unless the clear preponderance of the evidence is to the contrary.

*Id.*

While a court "cannot by judicial fiat add an additional ground for divorce that is unknown to the statute," **Perrin v. Perrin**, 299 S.W.2d 19, 24 (Tenn. 1957), it is likewise true that

> . . . society is ill-served by a legally commanded continuance of a marriage which exists in name only. . . . Society is not interested in perpetuating *a status out of which no good can come and from which harm may result.*

**Farrar v. Farrar**, 553 S.W.2d 741, 745 (Tenn. 1977) (quoting from **Lingner v. Lingner**, 56 S.W.2d 749, 752 (Tenn. 1933) (emphasis in **Farrar**).

Wife presented the following testimony as her basis for seeking a divorce:

> A. Well, there's really just no marriage. I mean there is no--nothing is ours, everything is just his. He doesn't include me in anything. He doesn't talk to me about anything. Anything that he's going to do or wants to do or regarding the house or anything. You know, I'm completely left in the dark about anything. I know nothing. I'm not suppose to know anything.
>
> Q. Have you tried to inquire of him during this marriage?

4

A. Yeah, everything is real secretive. To me, I mean--

* * *

Q. But you say, he wouldn't discuss things with you about the house?

A. No, I mean if he was going to do anything to the house, he was just going to do it. I mean basically that was his house.[1]

Q. Do you have any say so about it?

A. No, I had no say so. None.

Q. As far as his financial affairs, how has he handled his financial affairs since the time you got married to him?

A. It's just--it's secretive too. I wasn't to know anything.

* * *

Q. Would he ever discuss his business affairs with you?

A. No.

Q. Did he tell you why?

A. Never did. I think everything is just--I think it's just a lot of the way he is, I guess. Everything is just his or his business. No one else's.

* * *

A. There's just no marriage there. No communication. There is just no marriage. If it was different I wouldn't have left.

There was no testimony of physical or emotional abuse; nor was there any testimony that Wife was adversely affected, mentally, emotionally, or physically, as a result of Husband's "secretive" conduct. There was no testimony that Husband cursed or mistreated Wife. There was no testimony that Husband "caus[ed]

---

[1]Husband owned the house prior to the marriage.

... unnecessary suffering." *See **Gardner***, 58 S.W. at 343.

The evidence preponderates against the trial court's determination that Wife is entitled to an absolute divorce on the ground of inappropriate marital conduct/cruel and inhuman treatment or conduct.[2] In evaluating the evidence, we have accredited the testimony of Wife where it conflicts with that of Husband, who generally denied that he was other than a caring and loving husband. We do this because the law is clear that in a case like this, the question of credibility is for the trial judge. ***Newberry***, 493 S.W.2d at 101; ***Tennessee Valley Kaolin Corp. v. Perry***, 526 S.W.2d 488, 490 (Tenn.App. 1974). Taking her testimony at face value, it simply does not make out the ground set forth at T.C.A. § 36-4-102(a)(1). As the Supreme Court said in the ***Perrin*** case, we "cannot by judicial fiat add an additional ground for divorce." 299 S.W.2d at 24. To approve an absolute divorce based on this testimony would amount to judicial legislation. That is not our role. If this state is to recognize the type of conduct shown in this case as a ground for divorce in a contested setting, it must be accomplished by legislative enactment.

We vacate the trial court's grant of an absolute divorce. We recognize that Husband has testified that he does not want Wife to return to him.[3] It is likewise clear that Wife

---

[2]Husband's brief seems to suggest that inappropriate marital conduct may be different from cruel and inhuman treatment. They are different names for the same thing. *See* T.C.A. § 36-4-102(a)(1).

[3]Husband testified, "I don't think she should come back."

has no intention of resuming a marital relationship with Husband. Pursuant to our authority under Rule 36. T.R.A.P., we modify the trial court's judgment to provide that the parties will reside separate and apart, i.e., separate maintenance. A trial court "has the inherent power, independent of statute, to grant the relief [of separate maintenance] in proper cases, where a divorce is not sought or in which the complainant is not entitled to a divorce." *Stephenson v. Stephenson*, 298 S.W.2d 717, 719-20 (Tenn. 1957). At an appropriate time, Wife is at liberty to seek an absolute divorce pursuant to applicable statutory authority.

Turning our attention to the division of property, we note that the applicable statute permits a court to divide marital property in a case of separate maintenance:

> In all actions for divorce or separate support and maintenance, the court having jurisdiction thereof may, upon request of either party, and prior to any determination as to whether it is appropriate to order the support and maintenance of one (1) party by the other, equitably divide, distribute or assign the marital property between the parties without regard to marital fault in proportions as the court deems just.

T.C.A. § 36-4-121(a)(1).

We find that the trial court's division of property in this case was equitable and otherwise appropriate. That division was as follows:

**To Wife**

7

```
1992 Chrysler                    $ 7,000
Cash payment from Husband          7,500
Debts                             <3,650>
                                 $10,850
                                 =======
```

**To Husband**

```
Furniture and other
   personal property            $ 8,530
Savings account                  18,719
Debts                            <2,600>
Payment to Wife                  <7,500>
                                 $17,149
                                 =======
```

The trial court found that the marital property in this case was properly valued at approximately $28,000. Husband argues that the 1992 Chrysler and the savings account should be considered as his separate property. We recognize that the 1992 Chrysler was purchased shortly before the marriage and that a substantial down payment was made out of Husband's separate funds; but to the extent that any portion of the value remaining at the time of divorce is properly considered as separate property, we believe the award of that portion to Wife can be justified as alimony *in solido*. *See* T.C.A. § 36-5-101(a)(1). In so holding, we are not going beyond the pleadings because the complaint contains a prayer for alimony, and the proof justifies such an award in view of the great disparity in the parties' incomes and the other factors set forth at T.C.A. § 36-5-101(d)(1)(A)-(L). We find no error in the award of the 1992 Chrysler to Wife. We are permitted to affirm the trial court's award if we find the result correct, even if we don't totally agree with the trial court's reasoning. *Kelly v. Kelly*, 679 S.W.2d 458, 460 (Tenn.App. 1984).

8

We believe the savings account is properly viewed as a marital asset. It seems clear to us that the funds in that account represent monies earned during the marriage. As such, they are marital property, even though the account is in Husband's individual name. Title is not the critical factor in the separate property/marital property dichotomy. *Langford v. Langford*, 421 S.W.2d 632, 634 (Tenn. 1967).

A trial court is vested with broad discretion in dividing the parties' marital property and in decreeing alimony. *Batson v. Batson*, 769 S.W.2d 849, 859 (Tenn.App. 1988)*; Aaron v. Aaron*, 909 S.W.2d 408, 410-11 (Tenn. 1995). We do not find that the evidence preponderates against the trial court's division and distribution of property.

The trial court's grant of an absolute divorce to Wife is hereby vacated. The trial court's judgment is modified to provide that Wife will live separate and apart from Husband pursuant to a decree of separate maintenance. In all other respects, the trial court's judgment is affirmed. Costs on appeal are taxed against the appellant and his surety. This case is remanded to the trial court for such further proceedings as may be necessary, consistent with this opinion, and for collection of costs assessed below, all pursuant to applicable law.

_____
Charles D. Susano, Jr., J.

9

CONCUR:


_____
Houston M. Goddard, P.J.


_____
William H. Inman, Sr.J.