IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
July 11, 2005 Session

## DeANGELO BEETHOVEN NEWMAN v. LISA MICHELLE MYATT

**Direct Appeal from the Circuit Court for Washington County**
**No. J3757       Hon. Robert G. Lincoln, Circuit Judge**

---

**No. E2004-02890-COA-R3-CV - FILED AUGUST 22, 2005**

---

The father filed a Petition to change custody of minor son from mother to father. Upon hearing evidence, the Trial Court held there had been a material change of circumstances and it was in the child's best interest to award custody to the father. On appeal, we affirm.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Circuit Court Affirmed.**

HERSCHEL PICKENS FRANKS, P.J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR., J., and D. MICHAEL SWINEY, J., joined.

Christopher P. Capps, Morristown, Tennessee, for appellant.

M. Stanley Givens, Johnson City, Tennessee, for appellee.

**OPINION**

In this custody dispute, the Trial Judge changed the custody of the child from the mother to the father, and the mother has appealed to this Court.

The child was born on April 4, 1992, and plaintiff father filed a Petition for Legitimation on June 10, 1998, alleging that he had been voluntarily paying support to mother since the child's birth, and had maintained steady contact and visitation with the child. The Petition alleged that the mother had moved to Hamblen County with the child, and father desired to establish

regular visitation with his son.

The parties entered an Agreed Order on August 31, 1998, legitimating the child and granting custody to the mother. The father was granted standard visitation and ordered to pay child support.

On April 5, 2004, the father filed a Petition for Change of Custody, and alleged that a substantial and material change of circumstances had arisen since the original custody order, and that it was in the child's best interests that he be in the custody of his father. At the behest of the mother, a Guardian Ad Litem was appointed for the child, to investigate the circumstances of the child and report it to the Court. The Court conducted a prolonged trial with numerous witnesses testifying. At the conclusion of the evidentiary hearing, the Court rendered an oral opinion which was reduced to writing and incorporated in the Court's Order on August 20, 2004 finding that it was in the child's best interest to be placed in the father's custody.

The Court, in its Memorandum, found regarding the factors enumerated in Tenn. Code Ann. § 36-6-106, the parties were equal on several factors including love and emotional ties, stability of family, mental and physical health of parties, etc. The Court noted that he interviewed the child in chambers in the presence of the attorneys, but that he could give little credence to the child's preference because the child was so upset, and the only preference he expressed was to say that he like Morristown.[1]

The Court said the factors regarding the disposition of the parents to provide for the child's needs, the degree to which a party has been primary care giver, and the parent's past performance of parenting responsibilities, were the most important factors to consider. The Court noted that since kindergarten, the child had missed 17-31 days of school each year, that his grades were "horrendous", and that he had been diagnosed by a social worker with ADHD. The Court stated that it was "disturbed" that a child who had been passed to the fifth grade could only read and do math at a first or second grade level.

The Court stated the mother had known of the child's ADHD diagnosis since March 2004, and also knew that tutoring (by way of Resource) had helped in the past, but had failed to give the child any further tutoring since the diagnosis. The Court found the father asked the mother to let him have the child for the summer to get him tutored at Sylvan Learning Center, but the mother refused. Also, the Court said the school records were self-explanatory, and that it was "hard to learn when you're not at school."

---

[1]While the attorneys were present for the in camera interview, apparently no court reporter was present, as we have no transcript of that hearing, which we have ruled is mandatory. The hearing was well in advance of the actual trial, and the Trial Court obviously gave no weight to the in camera hearing. We conclude that the failure to have a court reporter present to transcribe the hearing was harmless error under the circumstances.

The Court concluded that a substantial and material change of circumstances had been established, and that the child's poor school record was "controllable by the parent who has primary custody and at this point that happens to be mother." The Court further noted the mother did not work, but was supposed to be starting a job the following Monday, and that the father and his wife were in a better position to care for the child. Further, that the father had a better work ethic, and had sought tutoring for the child, and he further found that the mother's excuses for the poor attendance were not credible, and that the mother had smoked around the child, both at home and in the car, which contributed to the child's allergies and health problems.

The Court observed that the child had ties in the Washington County community because he had lived there until he was in kindergarten, and had friends and family there, as well as church and ball team associations.

The issues for review are:

1.      Whether the trial court erred in finding that a material and substantial change of circumstances had occurred?

2.      Whether the trial court erred in failing to give proper weight to the factors enumerated in Tenn. Code Ann. §36-6-106?

3.      Whether the trial court erred in finding that the best interests of the child would be served by changing custody from mother to father?

In child custody cases, appellate review is *de novo* upon the record with the presumption of correctness of the Trial Court's findings of fact. Tenn. R. App. P. 13(d); *Hass v. Knighton*, 676 S.W.2d 554, 555 (Tenn.1984).

The father has the burden of establishing a material change of circumstances, and in this regard, we have said:

Although there is no concrete definition for what constitutes a material change of circumstances, this Court has enumerated several factors that should be taken into consideration when determining whether such a change has occurred. In general, the change must occur after the entry of the order sought to be modified and the change cannot be one that was known or reasonably anticipated when the order was entered. In addition, the material change of circumstances must be a change in the child's circumstances, not the circumstances of either or both of the parents. Finally, the change must affect the child's well-being in a material way.

*Hoalcraft v. Smithson*, 19 S.W.3d 822, 829 (Tenn. Ct. App. 1999)(citations omitted).

In this case, the evidence established that over the ensuing 6 years after the original

custody order was put down, that the child had developed significant problems in school both with grades and attendance. This circumstance could not have been anticipated/foreseen when the original order was entered, because the child had not yet started school. Also, this is a change in the child's circumstances and not that of the parents, and it also has affected his well-being, since he is not able to perform in school at his appropriate grade level. Education is an important part of a child's development, and he has not received adequate help or attention in this area.

Given the proof that was presented regarding the child's struggles in school and his inability to function with his peers, and his excessive absenteeism each and every year, a basis was established for the Court's finding that a substantial and material change of circumstances has occurred since the entry of the original order. The evidence does not preponderate against the Trial Court's finding in this regard. Tenn. R. App. P. 13(d).

Mother also argues the Trial Court did not give proper consideration to the statutory factors enumerated in Tenn. Code Ann. §36-6-106 regarding custody decisions. Those factors are:

(1) The love, affection and emotional ties existing between the parents and child;

(2) The disposition of the parents to provide the child with food, clothing, medical care, education and other necessary care and the degree to which a parent has been the primary care giver;

(3) The importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory environment; . . .

(4) The stability of the family unit of the parents;

(5) The mental and physical health of the parents;

(6) The home, school and community record of the child;

(7) The reasonable preference of the child if twelve (12) years of age or older. The court may hear the preference of a younger child upon request. The preferences of older children should normally be given greater weight than those of younger children;

(8) Evidence of physical or emotional abuse to the child, to the other parent or to any other person; . . .

(9) The character and behavior of any other person who resides in or frequents the home of a parent and such person's interactions with the child; and

(10) Each parent's past and potential for future performance of parenting

responsibilities, including the willingness and ability of each of the parents to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent, consistent with the best interest of the child.

A review of the Trial Court's findings demonstrates that the Trial Court did, in fact, properly consider and comment on each of the statutory factors. The Court found that as to certain factors, namely love and affection, stability of the family unit, and mental and physical health of the parents, that the parties were essentially equal. The Court found the child had expressed a liking for Morristown, but that he had been so clearly torn about the decision and so traumatized by it, that the Court gave little credence to his preference.

As to the remaining factors, the Court found there were no allegations of abuse, and nothing regarding the character of other persons in the home which concerned the Court, such that the main factors which influenced the Court's decision were those dealing with the disposition of the parents regarding providing for the child's needs, the child's home, school, and community record, and the parents' potential for future performance of parenting responsibilities. The Court found that these factors militated in favor of granting custody to the father, primarily based upon the mother's lack of concern/help with the child's school problems, his poor attendance record while in her care, and her poor example set by her own school/work history. The evidence preponderates in favor of these findings. Tenn. R. App. P. 13(d).

While continuity of placement is one of the factors to be considered, as the mother argues, this does not outweigh all of the other factors, especially where the proof regarding the child's struggles in school is so persuasive. We conclude the Trial Court properly analyzed the appropriate statutory factors, and this issue is without merit.

Having satisfied the requirement regarding a substantial and material change of circumstances, the Trial Court then determined what was in The child's best interests, utilizing the statutory factors as discussed. The Trial Court concluded that the mandated factors required a change of custody from the mother to the father, as such was in the best interests of the child.

Because custody decisions are factually driven and often are determined by the credibility of the testimony, appellate courts are hesitant to reverse the trial courts' decisions because the trial judge was able to observe the witnesses testify and judge their credibility. *Adelsperger v. Adelsperger*, 970 S.W.2d 482 (Tenn. Ct. App. 1997). Thus, the award will be upheld unless it is "based upon a material error of law or the evidence preponderates against" it. *Id.* at 485. As we observed in *Whitaker v. Whitaker*, 957 S.W.2d 834 (Tenn. App. 1997). "Nowhere is the presumption of correctness of the trial court's conclusions more applicable than in matters of child custody where the surrounding testimony is complex and involved and frequently filled with disputes and acrimony.", which has previously been quoted in *Herrera v. Herrera*, 944 S.W.2d 379 (Tenn. App. 1996). We conclude that the Trial Court properly changed custody, and we affirm the Judgment of the Trial Court.

The cause is remanded, with the cost of the appeal assessed to Lisa Michelle Myatt.


_____
HERSCHEL PICKENS FRANKS, P.J.